In the Matter of **PENN CENTRAL TRANSPORTATION COMPANY, Debtor.**

In the Matter of **READING COMPANY, Debtor.**

In the Matter of **LEHIGH VALLEY RAILROAD COMPANY, Debtor.**

In the Matter of **The CENTRAL RAILROAD COMPANY OF NEW JERSEY, Debtor.**

In the Matter of **The LEHIGH AND HUDSON RIVER RAILWAY COMPANY, Debtor.**

Nos. 74–3, 74–5, 74–4, 74–2 and 74–1.

Special Court
Regional Rail Reorganization
Act of 1973.

Argued May 23, 1974.

Decided May 24, 1974.

Joseph Auerbach, Boston, Mass. (Morris Raker, Charles W. Morse, Jr., Sullivan & Worcester, Boston, Mass., James Wm. Moore, New Haven, Conn., of counsel), for appellant Richard Joyce Smith, Trustee of the property of The New York, New Haven and Hartford Railroad Co.

Gordon P. MacDougall, Washington, D. C. (Israel Packel, Atty. Gen., Harrisburg, Pa., of counsel), for appellant Commonwealth of Pennsylvania.

Howard H. Lewis, Philadelphia, Pa. (Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, Pa., of counsel), for appellees Joseph L. Castle and Andrew L. Lewis, Jr., Trustees of the property of Reading Co.

James F. Dausch, Washington, D. C. (Carla A. Hills, David J. Anderson, Dept. of Justice, Washington, D. C., of counsel), for the United States of America as intervenor-appellee.

Timothy V. Smith, New York City, for appellee John G. Troiano, Trustee of the property of The Lehigh and Hudson River Railway Co.

Before FRIENDLY, Presiding Judge, and McGOWAN and THOMSEN, Judges.

PER CURIAM:

We have before us five appeals from "120-day decisions" under the first sentence of § 207(b) of the Regional Rail Reorganization Act of 1973 (the Act). In Docket 74–3 Richard Joyce Smith, Trustee of the property of The New York, New Haven and Hartford Railroad Company (the New Haven Trustee), a creditor of Penn Central Transportation Company (Penn Central), appeals from an order of Judge Fullam in the District Court for the Eastern District of Pennsylvania finding that Penn Central is not reorganizable on an income basis within a reasonable time under § 77 of the Bankruptcy Act. The Commonwealth of Pennsylvania is the

appellant in the four other dockets. In the case of the Lehigh Valley, Judge Fullam made a finding similar to that in the Penn Central; so did Judge Ditter, also in the District Court for the Eastern District of Pennsylvania, in the case of Reading Company, and Judge Augelli in the District Court for the District of New Jersey in the case of The Central Railroad Company of New Jersey. In the case of The Lehigh and Hudson River Railway Company, Judge Ward, in the District Court for the Southern District of New York, found that the railroad could not be reorganized on an income basis within a reasonable time and also that the public interest required reorganization under the Act.

Our study of § 207(b) made us doubtful whether we had jurisdiction of appeals that might be taken from "120-day" decisions under the first sentence as distinguished from the "180-day" orders (or failure to make orders) under the third and fourth sentences. Our doubt was not bottomed, as thought by the New Haven Trustee, on any belief that our jurisdiction under § 207(b) was limited to orders that would constitute "final decisions" under 28 U.S.C. § 1291, but rather on scepticism whether Congress could have meant 120-day decisions as well as 180-day orders to be appealable. In the interest of an expeditious determination of this important procedural question, we provided in our Rule 13 that, immediately on the filing of an appeal from a decision under the

first sentence of § 207(b), the clerk of this court should send a notice requiring the appellant to show cause, at a time and place specified in such notice, why the appeal should not be dismissed for want of jurisdiction. Such notices were duly sent. Having received briefs and heard argument, we now dismiss all such appeals on that ground.

■ We begin our discussion by owning less than complete ability to understand why Congress required the district courts to act under § 207(b) in two steps rather than in one, although the legislative history, hereafter summarized, affords some clue how this came about. The 120-day decision is rendered before the district court has the benefit of the evaluation of the report of the Secretary of Transportation on Rail Service in the Midwest and Northeast Region by the Rail Services Planning Office under § 205(d)(1), which it will have available for 60 days before the 180-day decision is required. Moreover, the 120-day decision does not seem to have any immediate legal consequences, at least when it is adverse to reorganization under § 77;[1] in such cases these consequences flow rather from the action required to be taken within the 180-day period. Even if there were no other pertinent considerations, we would require much clearer language than that in § 207(b) to hold that such a "decision" is appealable.[2] But there are.

■ One strong indication that Congress did not intend us to review deci-

1. The Government suggests that a 120-day decision that a railroad is reorganizable on an income basis within a reasonable time under § 77 and that the public interest would be better served by continuing an existing proceeding under that section than by a reorganization under the Act is appealable since such a decision, unless modified, precludes an order for reorganization under the Act pursuant to the third sentence. Decisions of this sort have been made by Judge Krupansky in the District Court for the Northern District of Ohio with respect to the Erie Lackawanna Railway Company and by Judge Murray in the District Court for Massachusetts with respect to the Boston and Maine Corporation. Since no appeals have been taken from these decisions, we have no occasion to consider the correctness of the Government's suggestion.

Our opinion is limited to the appeals here before us.

2. The New Haven Trustee argues that, independently of § 207(b), our jurisdiction can be sustained under § 24 of the Bankruptcy Act which gives the courts of appeals "appellate jurisdiction from the several courts of bankruptcy in their respective jurisdictions in proceedings in bankruptcy, either interlocutory or final . . ." Apart from the point that, although exercising appellate functions under § 207(b), we are not a court of appeals as that term is used in the Judicial Code, the argument ignores the clear intention of Congress that judicial review under the Act should be as provided within its own four corners.

sions under the first sentence of § 207(b) such as those here in question is furnished by the timetable. Under the penultimate sentence all appeals under § 207(b) must be decided within 80 days after the appeal is taken—a most stringent requirement in light of the number of appeals Congress must have thought probable, the difficulty of the issues, and the voluminousness of the records. Yet if decisions under the first sentence against reorganization under § 77 were appealable and we should need the full 80 days to decide them, our decisions would not have been rendered by the time the district courts are required to act under the third sentence. Moreover, we cannot imagine that Congress intended to demand that we hear and decide within such onerous time limits two sets of appeals involving many of the same issues. Similar considerations apply with respect to counsel; if decisions under the first sentence against reorganization under § 77 were appealable, counsel would have to be writing their briefs to us at the same time they would be involved in further hearings in the district courts.

Our conclusion that 120-day decisions under the first sentence of § 207(b) against reorganization under § 77 are not appealable is also fortified by the legislative history. The relevant provision in the House bill, § 301, reads as follows:

Sec. 301. *Determination of Status of Railroads in Reorganization.*— Within sixty days after the date of enactment of this Act, each United States district court having jurisdiction over a railroad in reorganization shall make a finding as to whether or not, based on the financial condition of and prospects for such railroad, it can be reorganized on an income basis under section 77 of the Bankruptcy Act. With respect to a railroad which is found not to be reorganizable on an income basis under section 77 of the Bankruptcy Act, the court shall enter an order to the effect that such railroad shall be reorganized in accordance with the provisions of this Act and those provisions of such section 77 not inconsistent with this Act, or the court may entertain a motion to dismiss the section 77 proceedings. In any case in which a United States district court does not make the finding referred to in the first sentence of this section with respect to any railroad in reorganization within the sixty-day period referred to in such sentence, such railroad shall be presumed to be a railroad with respect to which there is a reasonable likelihood that it can be reorganized on an income basis under section 77 of the Bankruptcy Act. In the event that a railroad is found not to be reorganizable on an income basis under section 77 of the Bankruptcy Act, the court shall advise the association with respect to its findings under this section. The finding of each district court under the first sentence of this section, or the presumption created under the third sentence of this section, as the case may be, shall be subject to appeal as in the case of an order granting or denying a preliminary injunction pursuant to rule 52 of the Federal Rules of Civil Procedure and section 1292 of title 28 of the United States Code and any such appeal proceedings shall be concluded on an expedited basis.

See H.R.Rep. No. 93–620, 93d Cong. 1st Sess., p. 4. Clearly this provided only for one appeal, not for two,[3] although the appeal would be to the appropriate court of appeals and not to a special court, which, under § 501, came into existence at a much later date, after the adoption of the preliminary system plan.

The Senate took an entirely different course concerning the time for district courts to decide whether reorganization should be under § 77 or under the Act. The Railway Association was evidently to proceed initially on the assumption

---

3. The Commonwealth of Pennsylvania makes an argument to the contrary but we see no basis for it.

that all the bankrupt railroads in the Northeast would come under the plan. Then § 207(b) provided:

(b) *Approval.*—Within 90 days after the adoption and release by the Association of the preliminary system plan pursuant to subsection (a) of this section, each United States district court or other court having jurisdiction over a railroad in reorganization shall decide whether or not such railroad shall be reorganized by means of transferring some of its rail properties to the Corporation pursuant to the provisions of this Act. Because of the strong public interest in the continuance of rail transportation in the region pursuant to a system plan devised under the provisions of this Act, each such court shall order that reorganization be proceeded with pursuant to this Act unless it finds (1) that the railroad is reorganizable on an income basis within a reasonable time under section 77 of the Bankruptcy Act (11 U.S.C. 205) and that the public interest would be better served by such a reorganization than by a reorganization under this Act, or (2) that reorganization under this Act is not possible on terms which would be fair and equitable to the estate of the railroad in reorganization. An appeal from an order made under this section may be made only to the special court. Appeal to the special court shall be taken within 10 days following entry of an order pursuant to this subsection, and the special court shall complete its review and render its decision within 20 days after such appeal is taken. There shall be no review of the decision of the special court.

S.Rep.No. 93–601, 93d Cong., 1st Sess., pp. 70–71. Under the Senate bill there was again to be only one district court decision, although at a date much later than under the House bill, and consequently only one appeal—here to the special court.

Section 207(b) as enacted was evolved in conference. The relevant provision of the Conference Report, H.R.Rep.No. 93–744, 93d Cong. 1st Sess., p. 52, U.S. Code Cong. & Admin.News 1973, p. 3315, was as follows:

(4) the timing for decisions by the reorganization or other courts with regard to whether a railroad is reorganizable on an income basis or whether the "this Act does not provide a process which would be fair and equitable to the estate of the railroad in reorganization" has been modified. The conference substitute provides that, within 120 days after date of enactment, the reorganization or other court must decide whether a railroad in reorganization is reorganizable on an income basis within a reasonable period of time and that the public interest would be better served by continuing the present reorganization proceedings than by a reorganization under this bill. If the court decides that a railroad is not so reorganizable, the court is then required to order the railroad to proceed with reorganization pursuant to the bill. This court determination is to be submitted within 60 days after the Office submits its study and evaluation of the Secretary's report on rail services in the region (180 days after the date of enactment), unless the court finds that the legislation does not provide a process which would be fair and equitable to the estate of the railroad in reorganization. If the court makes such a finding it is directed to dismiss the reorganization (or other) proceedings. Under the House bill the decision to proceed with reorganization under this legislation was to be made within 60 days after enactment in order to give the planners as much advance notice as possible as to those railroad properties which could be included in the final system plan. In the Senate amendment the decision was to be made within 390 days after enactment in or-

der to give the court as much information about the reorganization process as possible. The conferees decided that a decision within 180 days after the date of enactment would provide the planners with adequate time to make their planning decisions, while simultaneously providing the court sufficient information concerning the process of reorganization under this legislation. For example, before the court is required to order a railroad to proceed in reorganization pursuant to this legislation it will have the benefit of the Secretary's report on rail services in the region, the Office's public hearings and its study and evaluation of that report, and study information and preliminary planning endeavors of the Association to consider if any person tries to sustain the burden of showing that the process of reorganization pursuant to this legislation would not be fair and equitable.

While the Conference Report admirably explicates the reason for placing the district court direction for reorganization under the Act 180 days after enactment rather than the 60 days provided in the House bill or the 390 days provided in the Senate bill, it does not explain why two sets of decisions were to be required rather than one. Seemingly the House and Senate bills were simply combined, with the time limits changed. However, we cannot believe that by compromising on the time periods for action by the district courts, the Conference Committee meant to authorize two sets of appeals when both the House and the Senate had been satisfied with one.

 We wish it to be crystal-clear that, in holding that appeals will not lie from 120-day decisions against reorganization under § 77 under the first sentence of § 207(b), we do not mean that matters determined in such decisions are not reviewable by this court. We mean only that review will come when an appeal is taken from the 180-day order (or non-order). Even when an appeal from an interlocutory order is authorized, failure to take such an appeal will not preclude review of a question that might then have been raised if that question is also presented by the final judgment, see 9 Moore, Federal Practice ¶ 110.25[2] (Ward ed.1973). *A fortiori*, as has long been held, Milwaukee and Minnesota R. R. v. Soutter, 69 U.S. (2 Wall.) 510, 520–521, 17 L.Ed. 900 (1865), a court on appeal from a final judgment must review earlier decisions affecting the judgment that were not appealable.[4] If a district judge who has returned a negative answer to one or both of the questions put in the first sentence of § 207(b) should adhere to that position, this will be the predicate for an order directing reorganization under the Act unless the judge finds that the Act does not provide a process fair and equitable to the estate. The determination of non-reorganizability under § 77 or that the public interest would not be better served by proceeding thereunder will thus be reviewable on appeals from the action or inaction by the district courts under the third and fourth sentences of § 207(b).

If we entertained more doubt than we do concerning the appealability of the 120-day decisions here at issue, we would consolidate the appeals from them with those that will be taken from the 180-day orders and apply the 80-day time limit to the consolidated appeals, with the time starting to run from the appeals from the later orders. However, since we are convinced that Congress intended one but only one set of appeals from decisions of district courts under § 207(b), the instant appeals are dismissed, without costs, for lack or jurisdiction.

4. Judge Fullam's opinion dealing with the secondary debtors in the Penn Central reorganization vividly illustrates the intertwining of the 120-day decisions and 180-day orders.